**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LILIAN P. VILLAGRAN AS THE ADMINISTRATRIX OF THE ESTATE OF ERYK SANCHINELLI : : : : v. : : FREIGHTBULL, INC., : VOYD WATKINS, & : JOHN DOES I-III : | **CIVIL ACTION** No. 22-2159 |

**McHUGH, J.**                                                                                                        **October 12, 2023**

### MEMORANDUM

This is an action arising out of a fatal trucking accident in which the plaintiff seeks both compensatory and punitive damages, and asserts both direct and vicarious liability claims against the company that employed the trucker involved. With discovery now closed, the trucking company seeks summary judgment as to punitive damages, and further seeks dismissal of the direct claims against it for negligent hiring and supervision. It stipulates to its vicarious liability for the actions of its driver. From there the trucking company argues that the direct claims should be dismissed because, in the absence of a claim for punitive damages, the evidence required on the direct liability claims is both unnecessary and prejudicial.

As to punitive damages, summary judgment will be granted because the record does not support a claim under the rigorous standard established by Pennsylvania law. As to the direct liability claims, I am not persuaded by the majority view that such claims should never proceed unless punitive damages are in play. In my view, a more nuanced analysis is required, similar to the balancing test embodied by Federal Rule of Evidence 403. But applying such a standard here,

I nonetheless conclude that the prejudicial impact to the defendant trucking company outweighs the probative value of the evidence, and thus the direct liability claims will be dismissed as well.

I.  **Factual Background**

On December 28, 2020, Plaintiff's decedent, Eryk Sanchinelli, collided with the side of a tractor trailer – owned by Defendant Freightbull and driven by Defendant Voyd Watkins – on Route 309 in Bucks County, Pennsylvania, as the truck was executing a left turn. Pl.'s Ex. A Watkins Dep. 50-51 (ECF 20-4); Defs.' Ex. E Gehris Dep. 16:5-13 (ECF 19-8). A dashcam video from a nearby parked truck depicts a tractor trailer with Freightbull's logo pulling out onto the highway at nighttime, stopping briefly, and turning on its left signal light before crossing two lanes of traffic to make a left turn. Defs.' Ex. B (ECF 19-5). Before the tractor trailer completed the turn, Mr. Sanchinelli's sedan crashed into the side of the trailer, close to the rear, causing fatal injuries to Mr. Sanchinelli. *Id.* Defendant Freightbull concedes that Mr. Watkins was acting within the scope of his employment for Freightbull at the time of the accident.[1] Defs.' Mot. Partial Summ. J. 2-3 (ECF 19-2); Defs.' Answer ¶ 27 (ECF 9); Defs.' Ex. D Ilioski Dep. at 71-72, 77 (ECF 19-7).

Plaintiff's widow Lilian Villagran has asserted both personal and vicarious liability claims arising out of the trucker's actions on the night of the accident, and direct claims against Freightbull for negligent entrustment, supervision, hiring, and retention. As to the direct claims against Freightbull, Plaintiff alleges that it did not properly train or supervise Watkins and thus should not have entrusted him to make a delivery in its tractor trailer. Compl. ¶¶ 57-66 (ECF 1). Plaintiff characterizes Freightbull's actions as "egregious conduct" warranting punitive damages. Pl.'s Opp'n Mem. 9 (ECF 20-3). As a factual matter, Plaintiff grounds her punitive claims in the "lack

---

[1] Plaintiff certainly does not challenge this concession and pleaded vicarious liability in the Complaint. ¶ 20 (ECF 1).

of adequate training materials, qualified training personnel and the lack of any investigation whatsoever into crashes." *Id.* at 13.  As noted at the outset, Defendants contend that there is no viable claim for punitive damages and that, as a result, I should dismiss the claims of negligent and reckless supervision, hiring, retention, and entrustment against Freightbull as a matter of law. Defs.' Mot. Partial Summ. J.

**I.    Standard of Review**

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56, as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

**II.    Discussion**

The two issues raised by the motion are interrelated because resolution of the punitive damages question bears upon the question of whether Plaintiff should be permitted to proceed with her direct liability claim against Freightbull.  I will therefore proceed by first addressing the viability of the punitive damages claim.

   a. *Punitive Damages*

The Pennsylvania Supreme Court "has embraced the guideline of Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages: 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984). The "state of mind of the actor" is extremely important to this inquiry because the action, or lack of action, "must be intentional, reckless or malicious." *Id.* at 748.  Punitive damages require conduct that goes beyond negligence or even gross negligence and is viewed as an "extreme remedy." *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096-98 & n.14 (Pa. 1985) (abrogated on other grounds by *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800 (Pa. 1989)); *see SHV*

*Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 705 (Pa. 1991) ("[Punitive] damages are not justified where the defendant's mental state rises to no more than gross negligence."). "[A]n appreciation of the risk is a necessary element of the mental state required for the imposition of such damages." *Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (quoting *Martin*, 494 A.2d at 1097 n.12). Moreover, general rules of causation apply with equal force to punitive damages. Therefore, in determining the sufficiency of evidence for punitive damages, "there must be some nexus between [alleged] violations and the cause of the accident." *Achey v. Crete Carrier Corp.*, No. 07-3592, 2009 WL 9083282, at *7-8 (E.D. Pa. Mar. 30, 2009); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.").

As to the Defendant trucker, Voyd Watkins, the video recovered from an adjacent vehicle shows Mr. Watkins slowly pulling out of the parking lot, coming to a complete stop at the edge of the roadway, and then pausing with his left-hand turn signal on for several seconds before commencing his turn and slowly entering the roadway. Defs.' Ex. B. Plaintiff submits that Watkins admitted to not stopping during his deposition, but the transcript definitively refutes this contention, Pl.'s Ex. A Watkins Dep. 69-70, and the video is strongly corroborative of Watkins' account. He may have misjudged the proximity and closing speed of the decedent's vehicle, but nothing can be observed that would form a basis for punitive damages.

As to the Defendant trucking company, Plaintiff offers three grounds on which a reasonable jury could find that Freightbull's conduct was "egregious and recklessly indifferent." Pl.'s Opp'n Mem. 3. First, Ms. Villagran argues that Freightbull's safety officer, Jovanka Ilioski, lacks the requisite experience to train its drivers. *Id.* at 9. In support, Plaintiff points out that Ms. Ilioski has no college degree or commercial driver's license (CDL), that she is the sister of Freightbull's

4

President, had only three years of trucking safety experience before starting in her role as head safety officer, and that she pared down the safety materials purchased from an outside consultant from 80 pages to 16 pages.  Pl.'s Opp'n Mem. 9; Pl.'s Ex. B Ilioski Dep. 26-31, 43-44, 110-12 (ECF 20-5).  These allegations by themselves fall well short of proving egregious conduct.  Family-owned companies comprise a substantial percentage of United States businesses.[2]  A familial relationship in itself hardly equates to a lack of competence.  Further, three years of experience in trucking safety does not strike the Court as palpably inadequate.  As to her purported lack of formal training and credentials, the criticism that she lacks a college degree rings hollow when it appears that Plaintiff's expert does not either.  And though it is true that she does not hold a CDL or have experience in truck driving, nor do most law professors have experience in the practice of law.  Notably, Plaintiff's expert does not define any minimum qualifications or standards for in-house safety consultants.  Pl.'s Ex. C Rep. by Adam Grill (ECF 20-6).  Finally, the editing of training materials may reflect carelessness, or it may reflect sound judgment as to effective communication.  But, on the record as it stands, Plaintiff provides no insight as to which is the case here.  In sum, Plaintiff's criticisms are closer to quibbles, and in any event, Plaintiff cannot demonstrate that Ilioski was so egregiously unqualified as to support punitive damages.

Second, Plaintiff argues that Freightbull's conduct is egregious because they provide no training in trip planning.  Pl.'s Opp'n Mem. 10.  Freightbull does not dispute this, but a lack of training as to one aspect of professional driving hardly amounts to egregious conduct under Pennsylvania law.  More importantly, Plaintiff draws no link between Freightbull's supposed

---

[2] *See* Aaron Finkle, *Annual Business Survey: Economic and Demographic Characteristics for all U.S. Businesses and Business Owners by Sex, Ethnicity, Race, and Veteran Status*, United States Census Bureau, 22 (Dec. 15, 2022), https://www2.census.gov/about/training-workshops/2022/2022-12-15-abs-presentation.pdf (discussing data showing that more than one-quarter of all businesses in the United States are family-owned).

egregious conduct and its failure to train on this one subject. Watkins testified in detail as to his pre-trip planning for this run, including his prior familiarity with the route, habit of identifying all available truck stops en route, and specific familiarity with the truck stop where he waited until the receiver was open to accept the delivery. Pl.'s Ex. A Watkins Dep. 51-62.

Finally, Plaintiff also argues that Freightbull's conduct is egregious because the company does not conduct its own crash investigations. Pl.'s Opp'n Mem. 10. Again, the nexus between this alleged shortcoming and the accident is unclear. The record indicates that Voyd Watkins has been in two collisions resulting in minor property damage before working at Freightbull,[3] and none while working for Freightbull before the collision with Mr. Sanchinelli. Pl.'s Ex. C Grill Rep. 19-20; Pl.'s Ex. A Watkins' Dep. 23-25. Consequently, even if Freightbull conducted a thorough investigation of every collision involving one of its drivers, one is hard pressed to see how that would have prevented the accident here, particularly when considering the contemporaneous video evidence. In that regard, although Plaintiff characterizes Watkins as unqualified, his driving record hardly supports such a description. In his approximately 17 years as a professional truck driver between 2006 and 2023, he had a total of seven infractions. Pl.'s Ex. C Grill Rep. 19-20. None was for reckless driving, and his license was never suspended or revoked.

Given the controlling principle that "ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages," Plaintiff has not sufficiently demonstrated evidence that a reasonable jury would award punitive damages. *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005). I will therefore grant summary judgment as to the punitive damage claim.

---

[3] Mr. Watkins' driving history report notes only one accident. Pl.'s Ex. C Grill Rep. 19-20. At deposition, however, Mr. Watkins recalled that he had a second minor accident as a trucker involving bumper damage. Pl.'s Ex. A Watkins Dep. 24-25.

### b. *Viability of the direct claim against Freightbull*

Freightbull goes on to argue that with punitive damages out of the case, the direct claim against it should be dismissed, as it has admitted that Defendant Watkins is an employee who acted under the scope of Freightbull's employment at the time of the crash, for whom it is vicariously liable. The arguments in support of dismissal are both that such a claim is unnecessary, and that the evidence to support such a claim would ordinarily be inadmissible in a simple negligence case against a truck driver.

There is a split of authority among the states, and the Pennsylvania Supreme Court has not yet addressed the issue.

In a majority of states, courts have held that when an employer admits that its employee was acting within the scope of employment at the time of the accident and there is no viable claim for punitive damages, then the plaintiff may not pursue direct liability claims against the employer. *See Sterner v. Titus Transp.*, No. 10-2027, 2013 WL 6506591, at *3 (M.D. Pa. Dec. 12, 2013) (collecting cases in different states adopting this majority rule). The principal rationale is that proceeding on the direct liability claim "would allow the introduction of evidence of prior accidents of the driver, highly prejudicial, irrelevant and inadmissible in the cause of action based on imputed negligence of the driver." *Calhoun v. Van Loon*, No. 12-458, 2014 WL 3428876, at *4 (M.D. Pa. July 11, 2014).

In contrast, other jurisdictions have held that an employer's admission that an employee was acting within the scope of employment should not preclude these direct liability claims. *See Sterner*, 2013 WL 6506591 at *4 (collecting cases representing the minority rule). The principal rationale for this view is that the nature of the claims is different, premised on the direct conduct

of the employer, and not wholly derivative. *See, e.g.*, *Zibolis-Sekella v. Ruehrwein*, No. 12-228, 2013 WL 3208573, *2 (D.N.H. June 24, 2013) (applying New Hampshire law).

In the absence of a controlling decision from the Pennsylvania Supreme Court, federal district courts in Pennsylvania seem to have consistently followed the majority rule, dismissing claims for negligent supervision, hiring, retention, and entrustment when the defendant-employer admits that the defendant-employee was acting within the scope of employment *and* there is no viable claim for punitive damages. *See, e.g.*, *Dragone v. Pew*, 621 F. Supp. 3d 561, 566 (E.D. Pa. 2022); *Carson v. Tucker*, 530 F. Supp. 3d 560, 563 (E.D. Pa. 2021); *see also Calhoun v. Van Loon*, No. 12-458, 2014 WL 3428876, at *4 (M.D. Pa. July 11, 2014); *Sterner v. Titus Transp., LP*, No. 10-2027, 2013 WL 6506591, at *3-4 (M.D. Pa. Dec. 12, 2013); *Allen v. Fletcher*, No. 07-722, 2009 WL 1542767, at *4-5 (M.D. Pa. June 2, 2009); *Fortunato v. May*, No. 04-1140, 2009 WL 703393, at *5 (W.D. Pa. Mar. 16, 2009).

Courts must always be concerned about irrelevant or prejudicial evidence. I am not convinced, however, that there should be a blanket rule that direct liability claims must always be dismissed unless the plaintiff can meet the onerous standard for punitive damages. Like the prosecution in a criminal case, a civil plaintiff bears not just a burden of proof as to the elements of the claim asserted, but also a burden of persuasion with the jury. This important distinction was explicitly recognized in *Old Chief v. U.S.*, 519 U.S. 172, 189-90 (1997), where the Court observed that "burden of persuasion needs evidentiary depth." Consequently, "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Id.* at 189. This principle

should apply with equal force in civil cases, especially for grave matters such as claims for wrongful death.

Separately, the Court in *Old Chief* recognized that jurors are appropriately concerned about the "moral underpinnings" of the law they are asked to apply, and the extent and nature of the evidence may bear upon this concern. *Id.* at 188. In the civil context, experienced lawyers are aware that there is an important distinction in jurors' eyes between cases where a defendant is liable and cases where a defendant is *culpable*. Here, for example, a juror could conceivably harbor doubts about the fairness of vicarious liability, which may be addressed by evidence directly bearing upon the employer's own conduct.

In my view, therefore, dismissal of direct liability claims need not invariably follow from the preclusion of punitive damages. Instead, the issue should be addressed through the lens of Federal Rule of Evidence 403, under which probative value is weighed against unfair prejudice. It may be true that evidence in support of a direct claim for negligent hiring or training has a prejudicial impact on the rest of the case. But that hardly ends the analysis, given the adage that all relevant evidence is prejudicial in some respect or else it would not *be* relevant. In other contexts – including criminal cases where liberty is at stake – mere prejudice does not suffice to exclude evidence, but only unfair prejudice. Without the same balancing principles governing direct liability claims like those brought here, the practical effect of the majority rule is to create an inherent bias in favor of civil defendants, for which I can discern no logical reason or legal authority.

Still, applying such a balancing test here, dismissal of the direct liability claim remains warranted. The evidence of corporate negligence on Freightbull's part does not just fail to meet the standard for punitive damages – it is minimal. The criticism leveled at Freightbull's in-house

training program seems peripheral, and the charges that it failed to train drivers on pre-trip planning or conduct accident investigations are wholly unrelated to the accident in this case. As reviewed above, the previous record of its driver reflects at most two minor collisions resulting in property damage, with only seven citations in 17 years of professional driving. The probative value of this evidence is minimal, as compared to the prejudice that follows from allowing the jury to consider evidence that would otherwise be excluded as irrelevant and prejudicial. On this record, therefore, dismissal of the Plaintiff's claims for negligent and reckless hiring, training, supervision, and entrustment is warranted.

### III.  Conclusion

For the reasons set forth above, Defendants' Partial Motion for Summary Judgment will be granted. An appropriate order follows.

<u>/s/Gerald Austin McHugh</u>
United States District Judge